Will Key JEFFERSON, Appellant,

v.

John M. ASPLUND, Eric E. Wohlforth, Herbert Land, Larry H. Ely, and Greater Anchorage Area Borough, Appellees.

No. 1036.

Supreme Court of Alaska.

Oct. 1, 1969.

Will Key Jefferson, in pro. per.

Victor Carlson, Borough Atty., Eric E. Wohlforth, Anchorage, for appellees.

Before NESBETT, C. J., DIMOND, RABINOWITZ, and CONNOR, JJ., and LEWIS, Superior Court Judge.

## OPINION

RABINOWITZ, Justice.

In his complaint below appellant primarily sought both declaratory and injunctive relief. On motion of appellees the superior court dismissed the complaint with prejudice. We have concluded that the lower court's ruling was in part erroneous.

In 1959, our legislature implemented the judiciary article of the Alaska constitution by defining the jurisdiction of the superior court.[1] In so doing the legislature vested the superior court with authority to render declaratory judgments. This grant flowed from the following statutory provision:

> In case of an actual controversy within the state, the superior court, upon the filing of an appropriate pleading, may declare the rights and legal relations of an interested party seeking the declaration, whether or not further relief is or could be sought. The declaration has the force and effect of a final judgment or decree and is reviewable as such. Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing,

against an adverse party whose rights have been determined by the judgment.[2]

■ It is apparent that our legislature intended to parallel the text of the federal Declaratory Judgment Act in its formulation of the declaratory judgment provisions just quoted.[3] Complementing Alaska's statutory provisions relating to declaratory judgments are the provisions of Civil Rule 57(a). By virtue of this rule of civil procedure, it is provided that:

> The procedure for obtaining a declaratory judgment pursuant to statute shall be in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar.[4]

It is essentially against this framework of Alaska's statutory and procedural provisions relating to declaratory judgments that the superior court's dismissal of the amended complaint must be judged. Before explaining the basis of our conclusion that the superior court erred in its dismissal of appellant's amended complaint, a brief examination of the historical antecedents of Alaska's declaratory judgment act and the jurisprudence of declaratory judgments in general is appropriate.

---

1. Alaska const. art. IV, § 1 provides in part:

    The judicial power of the State is vested in a supreme court, a superior court, and the courts established by the legislature. The jurisdiction of courts shall be prescribed by law.

2. AS 22.10.020(b) (SLA1959, ch. 50, § 17(1)(b)).

3. Currently 28 U.S.C. § 2201 reads as follows:

    In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any inter-

    ested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

    Additionally, 28 U.S.C. § 2202 provides that:

    Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

4. Alaska's procedural rule is practically identical to Fed.R.Civ.P. 57.

Although the earliest form of a declaratory judgment procedure is found in ancient Roman law, it was the late nineteenth century developments of declaratory relief in England which supplied the model for American legislation. In 1915, the first effective declaratory judgment statute in this country was enacted by the legislature of New Jersey.[5] Seven years later the Uniform Declaratory Judgments Act was approved by the commissioners on Uniform State Laws. Since its approval, over 30 states have adopted (or have enacted statutes substantially similar to) the Uniform Act.[6]

In regard to the federal prototype of Alaska's Declaratory Judgments Act, judicial precedent has established that the federal Declaratory Judgment Act is both remedial and procedural in nature, creating no substantive rights or duties.[7] In short, the procedure provided by the federal Declaratory Judgment Act added another remedy to existing legal and equitable remedies. As Professor Moore puts it:

Courts had from time immemorial rendered declaratory judgments, i. e., had declared or adjudicated rights in cases that could be fitted within any traditional common law form of action or equitable remedy. But these traditional legal and equitable remedies did not always afford an adequate judicial remedy. The declaratory judgment remedy is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy, and an adjudication would serve a useful purpose.[8]

■ Under both the federal act and the Alaska's Declaratory Judgment Act, AS 22.-10.020(b), it is provided that the court "may declare the rights and legal relations" of an interested party seeking the declaration.[9] Thus, it is clear that judicial discretion was intended to play a significant role in the administration of both acts.[10]

According to Professor Borchard, an eminent authority in the field of declaratory judgment,

[t]he two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judg-

---

5. N.J.Laws of 1915, ch. 116, § 7, at 185. In the late 1800's both Rhode Island and Maryland provided for a degree of declaratory relief.

6. As previously indicated, Alaska had not adopted the Uniform Act. In regard to the relationship between the Uniform Act and the federal Declaratory Judgment Act, Professor Moore writes:
   The Uniform Act is much more explicit and detailed than the federal Act. In commenting upon the different drafting techniques employed, Professor Borchard states:
   " * * * it seemed necessary to write into the Uniform Act as much as possible of the established jurisprudence so as to guide state courts. But it was thought best to make the Federal Act a short one and to include only such provisions as were indispensable * * *."
   Professor Moore also states that "the Uniform Declaratory Judgments Act and the surrounding state jurisprudential experience are of great assistance to federal courts in their interpretation and application of the federal Act * * *."

6A J. Moore, Federal Practice ¶ 57.02[1], at 3005 (2d ed.1966) (footnotes omitted).

7. McCarty v. Hollis, 120 F.2d 540 (10th Cir. 1941); Reliance Life Ins. Co. v. Burgess, 112 F.2d 234 (8th Cir. 1940). Since our Declaratory Judgment Act and pertinent procedural provisions are substantially similar to their federal counterparts, we consider federal precedent pertinent.

8. 6A J. Moore, Federal Practice ¶ 57.05, at 3022 (2d ed.1966).

9. *Supra* note 3.

10. In regard to the federal act and judicial discretion thereunder, see Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937). *Compare* § 6 of the Uniform Declaratory Judgments Act which provides:
    The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.

ment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.[11]

In regard to the federal act, it has been said that:

The discretion to grant or refuse declaratory relief should be liberally exercised to effectuate the purposes of the Declaratory Judgment Act and thereby afford relief· from uncertainty and insecurity with respect to rights, status and other legal relations. * * *[12]

This exercise of judicial discretion, under the federal Declaratory Judgment Act, is subject to appellate review.[13] Although we choose to make no comment upon the merits of his thesis, we note that in Professor Moore's view,

in reviewing the trial court's exercise of discretion to grant or refuse declaratory relief, a sound position is that the appellate court may substitute its judgment for that of the lower court. The determination of the trial court may, therefore, be reversed where, though not arbitrary or capricious, it was nevertheless erroneous. This view of the appel-

late court's power to review and reverse the action of the trial court in respect to its discretionary power to grant or refuse declaratory relief permits greater uniformity than would otherwise be possible.[14]

Judicial precedent had delineated criteria for the guidance of trial courts in the exercise of discretion under the federal act. Thus, it is settled that the existence of another adequate remedy does not preclude declaratory relief where appropriate;[15] that courts should guard against the use of the declaratory judgment action as a means of procedural fencing;[16] and that declaratory relief may be withheld when the grant of such relief would not terminate the controversy or the uncertainty which gave rise to the declaratory proceeding.[17]

Both Alaska's Declaratory Judgment Act and the federal act require "a case of * * * actual controversy" as a prerequisite to the grant of declaratory relief. In analyzing the meaning of "justiciability," Chief Justice Hughes, in Aetna Life Insurance Company v. Haworth,[18] said:

A "controversy" in this sense must be one that is appropriate for judicial determination. * * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is

11. Borchard, Declaratory Judgments at 299 (2d ed.1941); Maryland Cas. Co. v. Boyle Constr. Co., 123 F.2d 558, 565 (4th Cir. 1941); Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321 (4th Cir. 1937).

12. Lehigh Coal & Navigation Co. v. Central R.R., 33 F.Supp. 362, 365 (E.D.Pa. 1940). See also Larson v. General Motors Corp., 134 F.2d 450, 453 (2d Cir. 1943).

13. Delno v. Market St. Ry., 124 F.2d 965 (9th Cir. 1942); Dominion Elec. Mfg. Co. v. Edwin L. Wiegand Co., 126 F.2d 172 (6th Cir. 1942); 3 W. Barron & A. Holtzoff, Federal Practice and Procedure § 1265, at 298.

14. 6A J. Moore, Federal Practice ¶ 57.08 [2], at 303 (2d ed.1966) (footnotes omitted); American States Ins. Co. v. D'Atri, 375 F.2d 761 (6th Cir. 1967); Sears,

Roebuck & Co. v. American Mut. Liab. Ins. Co., 372 F.2d 435 (7th Cir. 1967); Provident Tradesmen's Bank & Trust Co. v. Lumbermen's Mut. Cas. Co., 365 F.2d 802, 815 (3rd Cir. 1966).

15. Larson v. General Motors Corp., 134 F.2d 450, 453 (2d Cir. 1943), cert. denied, 319 U.S. 762, 63 S.Ct. 1318, 87 L. Ed. 1713 (1943).

16. Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952).

17. Public Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 246, 73 S.Ct. 236, 97 L.Ed. 291, 297 (1952); Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321 (4th Cir. 1937); Uniform Declaratory Judgments Act § 6.

18. 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000 (1937).

academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. * * * And as it is not essential to the exercise of the judicial power that an injunction be sought, allegations that irreparable injury is threatened are not required.[19]

It follows that declaratory relief will be withheld when declarations are sought concerning hypothetical or advisory questions [20] or moot questions.[21] On the other hand, declaratory relief may be sought to determine the validity and construction of statutes and public acts.[22] An appropriate summary of these principles is provided by Professor Moore in the following passage from his treatise:

> [I]t may be stated that the declaratory action is limited to no particular class of cases, and is confined to no special type of litigation. Its scope is pervasive. If a "case or controversy" is presented, and the requisite elements of jurisdiction

are present, then in the absence of statutory prohibition, the court is competent to provide declaratory relief. Whether or not such relief will in fact be granted is a matter of judicial discretion. But the exercise of this discretion is to be in accordance with established principles, and is to be liberally exercised in achieving the Act's remedial objectives.[23]

Resolution of the narrow issues presented by this appeal requires consideration of more particularized criteria than the general declaratory judgment principles previously discussed.

As indicated earlier, Civil Rule 57(a) provides in part that "[t]he procedure for obtaining a declaratory judgment [under AS 22.10.020(b)] shall be in accordance" with our Rules of Civil Procedure. The intent of this rule of procedure was to establish that general rules of pleading and of civil procedure were to be made applicable to actions for declaratory relief.[24] Thus, all that is required of a complaint seeking declaratory relief is a simple statement of facts demonstrating that the superior court has jurisdiction and that an actual justiciable case or controversy is presented.[25] In short, the requirements

19. *Id.* at 240–241, 57 S.Ct. at 464, 81 L. Ed. at 621–622.

20. In Maryland Cas. Co. v. Pacific Coal & Iron Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 828–829 (1941), the court said:
    The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

21. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

22. Spector Motor Serv. Inc. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944); Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441 (1939); Chester C. Fosgate Co. v. Kirkland, 19 F.Supp. 152 (S.D.Fla.1937); United States ex rel. Welch v. Farley, 18 F. Supp. 75 (D.D.C.1937).

23. 6A J. Moore, Federal Practice ¶ 57.21 [4], at 3131 (2d ed.1966) (footnotes omitted).

24. The same conclusion has been reached in cases decided upon the federal declaratory judgment act and Civ.R. 57(a)'s counterpart, namely, Fed.R.Civ.P. 57. *See* 6A J. Moore, Federal Pracitce ¶ 57.-22[3].

25. 3 W. Barron & A. Holtzoff, Federal Practice and Procedure § 1269, at 319 (Wright rev.1958) (footnotes omitted). In this work, the authors state:
    The allegation that a controversy exists is not enough. The facts must be al-

of pleadings in actions seeking declaratory relief do not differ from those standards of pleadings governing other types of civil actions. These principles received explication and application in Gomillion v. Lightfoot.[26] There Negro citizens of Alabama sought to invalidate a state redistricting statute in a declaratory judgment action initiated in district court. Respondents, in part, moved for dismissal of the action for failure to state a claim upon which relief could be granted. The United States Supreme Court reversed the district court's ruling. Writing for the court, Mr. Justice Frankfurter said:

> At this stage of the litigation we are not concerned with the truth of the allegations, that is, the ability of petitioners to sustain their allegations by proof. The sole question is whether the allegations entitle them to make good on their claim that they are being denied rights under the United States Constitution.[27]

■■■ A rule substantially similar to the federal rule has evolved through judicial construction of the Uniform Declaratory Judgments Act. Typical of this line of state court decisions is City of Mobile v. Gulf Development Company [28] in which the state court test governing the sufficiency of pleadings seeking declaratory relief is formulated in the following manner:

> The test of the sufficiency of a complaint in a declaratory judgment pro-

ceeding is not whether the complaint shows that the plaintiff will succeed in getting a declaration of rights in accordance with his theory and contention but whether he is entitled to a declaration of rights at all.[29]

Adopting the foregoing standard for the determination of the sufficiency of a pleading which requests declaratory relief, we hold that portions of appellant's amended complaint adequately stated separate claims for declaratory relief while certain remaining claims for relief were barred under the doctrine of res judicata.

Reference to two prior decisions of this court will clarify our holding in the case at bar. In Dale v. Greater Anchorage Area Borough,[30] appellant Marjorie Dale sought a declaration that the October 3, 1967, election held by the Greater Anchorage Area Borough was invalid. One of the measures voted upon at this time was Proposition A which related to the approval or disapproval of the borough's incurring a $20,000,000 indebtedness for sewerage treatment facilities. The superior court dismissed appellant's complaint for the reason that it failed to state a claim upon which relief could be granted since appellant had not delivered to the borough assembly a written notice of contest of the election as required by borough ordinance. This court upheld the superior court's ruling in the *Dale* case.[31] Thereafter, Will Key

> leged and the legal right or interest of the parties made clear. The complaint must allege conduct of the defendants which threatens or endangers some legal right of the plaintiff.
> It is also well established federal precedent that there is no necessity of irreparable injury in a complaint for declaratory relief.

26. 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960).

27. *Id.* at 341, 81 S.Ct. at 127, 5 L.Ed.2d at 113. *See* Lerner v. Town of Islip, 272 F.Supp. 664, 665 (E.D.N.Y.1967); Fried v. Glenn Elec. Heater Corp., 198 F.Supp. 248, 254–255 (D.C.N.J.1961).

28. 277 Ala. 431, 171 So.2d 247 (1965).

29. *Id.* 171 So.2d at 257. To the same effect, see Nations v. Ramsey, 387 S.W.2d 276, 279 (Mo.Ct.App.1965); Baldwin v. City of Buffalo, 7 A.D.2d 386, 183 N.Y. S.2d 576, 577 (1959). *See also* Union County Bd. of Chosen Freeholders v. Union Co. Park Comm'n, 77 N.J.Super. 425, 186 A.2d 703, 707 (1962).

30. 439 P.2d 790 (Alaska 1968).

31. In affirming the trial court, we said in part:

> It is generally held that election contests are purely statutory and dependent upon statutory provisions for their conduct, and that the failure of a contestant to observe strict compliance with

Jefferson instituted an action wherein he sought a declaration that this same October 3, 1967, election conducted by the borough was invalid. Appellant's first amended complaint was dismissed with prejudice by the superior court for failure to state a claim upon which relief could be granted and on the basis that the decision in Dale v. Greater Anchorage Area Borough [32] was res judicata of the appellant's asserted claims.

In Jefferson v. Greater Anchorage Area Borough,[33] we adopted the "rule that the general principles of res judicata are applicable to suits brought by taxpayers, voters, and other residents of a state for the vindication of alleged public rights. This rule has been particularly applied in litigation challenging the validity of the public bonds." Adoption of this rule led us to the conclusion that the decision in *Dale* was res judicata with respect to the allegations of Will Key Jefferson's first amended complaint.

Of particular significance to the disposition of the case at bar are the allegations of Jefferson's rejected first amended complaint. In the main, the thrust of this pleading consisted of a full scale attack upon the validity of all aspects of the October 3, 1967, election which was held by the Greater Anchorage Area Borough. More particularly, appellant sought a declaration as to the invalidity of the three separate bonding propositions which were submitted to the electorate on October 3, 1967, together with a further declaration that candidate Ely was improperly elected.[34]

In his amended complaint in the case at bar, appellant Will Key Jefferson sought declaratory and injunctive relief against both the Greater Anchorage Area Borough and John M. Asplund, individually and as borough chairman. Examination of this six-count pleading has led us to the conclusion that three separate counts fall within the ambit of our holdings in Dale v. Greater Anchorage Area Borough [35] and Jefferson v. Greater Anchorage Area Borough.[36] For in these counts appellant once again is essentially seeking a judicial declaration that the election of October 3, 1967, was invalid both in regard to the three bonding propositions and in regard to the election of certain candidates for positions on the borough assembly.[37] We hold that the res judicata ramifications of our decisions in *Dale* and *Jefferson* negate the

the statutory requirements is fatal to his right to have an election contested.
\* \* \*
We apply the foregoing rule to this case. Appellant at no time delivered to the borough assembly a written notice of contest of the election as required by borough ordinance. Compliance with this requirement of the ordinance was a condition precedent to Appellant's invoking the power of the court to have the election declared invalid. Since Appellant has not met that condition, her complaint failed to state a claim upon which relief could be granted, as the court below correctly held.
Dale v. Greater Anchorage Area Borough, 439 P.2d 790, 792–793 (Alaska 1968) (footnotes omitted).

32. *Id.*

33. 451 P.2d 730, 732 (Alaska 1969).

34. AS 22.10.020(b) provides in part that: "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against an adverse party whose rights have been determined by the judgment." In accord with this grant, appellant also sought injunctive relief in his first amended complaint.

35. 439 P.2d 790 (Alaska 1968).

36. 451 P.2d 730 (Alaska 1969).

37. In Count III of his amended complaint in the case at bar, appellant asserted that Borough Assemblymen Lang and Ely have not properly qualified for the office of borough assemblymen. Under the allegations of Count V, appellant attempted to incorporate by reference the allegations of his first amended complaint, which complaint was ruled insufficient by virtue of our decision in Jefferson v. Greater Anchorage Area Borough, 451 P.2d 730 (Alaska 1969). In both Counts V and VI, appellant asked for an order directing the State of Alaska to appear, alleging that the state was an indispensable party.

possibility of appellant's establishing any claims for declaratory relief under Counts III, V, and VI of his amended complaint in the case at bar.[38] In short, we conclude that our decisions in *Dale* and *Jefferson* preclude appellant from attempting to question any facet of the October 3, 1967, election which was held by the Greater Anchorage Area Borough. We therefore hold that the trial court correctly dismissed with prejudice all portions of appellant's amended complaint which directly or indirectly sought declaratory or injunctive relief relative to any aspect of the October 3, 1967, borough election.

On the other hand, we are not persuaded that the superior court's dismissal of Counts I, II, and IV of the amended complaint was proper. In Count I, it was asserted that the borough chairman and the Greater Anchorage Area Borough had entered into illegal contracts for certain professional services; in Count II, appellant sought a declaration that AS 07.25.-080, giving the borough chairman power to veto actions of the borough assembly, was illegal; and in Count IV, it was alleged that illegal expenditures of borough funds had been made by the borough chairman. Of significance is the fact that none of

these counts involve any aspect of the October 3, 1967, borough election. Thus, the allegations of these three counts lie beyond the res judicata emanations of *Dale* and *Jefferson*. From the foregoing, it follows that the sufficiency of Counts I, II, and IV, as pleadings stating claims for declaratory relief, must be judged in accordance with the test we have previously discussed and adopted.[39] We reiterate the test of sufficiency is not whether the complaint demonstrates that the plaintiff will succeed but rather whether the allegations disclose that he is entitled to a declaration of rights. This criterion is met by allegations showing jurisdiction and the presence of an actual justiciable case or controversy. Tested against this criterion we hold that allegations of Counts I, II, and IV allege sufficient facts to constitute claims for declaratory relief.[40]

We therefore reverse the superior court's dismissal with prejudice of Counts I, II, and IV of appellant's amended complaint. The trial court's dismissal with prejudice of Counts III, V, and VI of appellant's amended complaint is affirmed. The case at bar is remanded for further proceedings in regard to Counts I, II, and IV of appellant's amended complaint.[41]

38. In our view, appellant's indispensable party allegations appearing in Counts V and VI of his amended complaint are so intimately connected with the allegations and relief he sought in his first amended complaint that the same fall within the res judicata reach of our decision in *Jefferson*.

39. *Supra* notes 27, 28, and 29.

40. Appellees moved to dismiss appellant's amended complaint on res judicata and estoppel grounds. The text of the superior court's "Order of Dismissal With Prejudice" does not clearly reveal the basis for the court's ruling. In part, the order reads as follows:

[A]nd it appearing to the Court that the basic underlying ground for the bulk of Plaintiff's complaint are irregularities with the Greater Anchorage Area Borough election of October 3, 1967, and the ultra-vires acts of the

offices [sic] * * * of the Greater Anchorage Area Borough and it further appearing that the Supreme Court of the State of Alaska has already ruled contrary to the challenging of the election of October 3, 1967 * * *.

Our determination of the sufficiency of pleading aspects of Counts I, II, and IV does not embody any intimation on our part that these counts represent, either individually or collectively, appropriate occasions for the exercise of judicial discretion in favor of granting declaratory relief. Study of the record does not reveal whether the trial court exercised its discretion in ruling on appellees' motion to dismiss the amended complaint.

41. Our disposition makes unnecessary resolution of appellant's argument concerning the lower court's award of attorney's fees to appellees.